UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOHN A. FLEMING,

        Plaintiff,

                                      Case No. 08-13110

                                      Honorable Paul D. Borman
                                      United States District Judge
v.

PATRICIA CARUSO, JAN NELSON, LISA
MOBLEY, PATRICK HUGHES, AND
SUZETTE PARLING,

        Defendants.

_____/


## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 29)

      This matter comes before the Court on Defendants' Motion for Summary Judgment. (Dkt.

No. 29.) Plaintiffs filed a Response. (Dkt. No. 33.) Defendants filed a Reply. (Dkt. No. 42.) A

hearing was held on April 1, 2010. For the reasons that follow, the Court GRANTS Defendants'

Motion for Summary Judgment.

## INTRODUCTION

      Plaintiff alleges in his Complaint that Defendant Parling, a Washtenaw County probation

officer, supplied false information in support of an Affidavit requesting that a bench warrant issue

for Plaintiff's arrest for violations of his probation. Plaintiff claims that Defendant Nelson, also a

Washtenaw County probation officer and Defendant Parling's supervisor, reviewed, approved,

executed and enforced the warrant with knowledge of the falsity of the statements contained in the

Affidavit. Plaintiff also alleges that Parling and Nelson falsely arrested and maliciously prosecuted him on the warrant by requiring him to return to Michigan in October, 2005, at risk of losing his job, to answer on the warrant which they knew at the time was no longer valid.

Defendants argue in their motion that Parling had probable cause to request the warrant and Nelson had probable cause to approve it and to continue to enforce it when Plaintiff returned to Michigan in October, 2005 to answer on the warrant. Defendants also argue that in any event, both Parling and Nelson are protected by qualified immunity. Defendants also argue in their motion that Defendants Parling and Nelson are absolutely immune from any suit against them in their official capacities.[1]

# I.    BACKGROUND

On June 28, 2004, Plaintiff pled guilty to failing to pay child support/leaving the state and was convicted. (Pl.'s Resp. Ex. 1.) On August 9, 2004, Washtenaw County Circuit Court Judge Melinda Morris sentenced Plaintiff to 5 years probation and payment of $26,000 in restitution to his ex-wife. (Pl.'s Resp. Ex. 28.) Plaintiff lived in Lansing, Illinois at the time of his sentencing and had a job there with Alpine Paving. (Pl.'s Resp. Ex. 2, Deposition of John Fleming, July 10, 2009 p. 6, 7, 9, 14; Ex. 25 (Pre-Sentence Report).) Plaintiff also had custody of his 8 year old son. (Pl.'s Resp. Ex. 2, Fleming Dep. 9-10, 24.)

---

[1] At oral argument, counsel for Plaintiff stated that Plaintiff was voluntarily dismissing Count IV, the Policy, Pattern and Practice claim. Plaintiff also indicated, in his response to Defendants' motion, that he is voluntarily dismissing the claims against Defendants Mobley and Hughes and also voluntarily dismissing his official capacity claim against Defendant Caruso. As state employees, any official capacity claims against any of these Defendants fail as a matter of law. *See Brandon v. Holt*, 469 U.S. 464, 471 (1985); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71(1989) (citing *Brandon v. Holt,* 469 U.S. 464, 471 (1985)); *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *S.J. v. Hamilton County*, 374 F.3d 416, 419 (6th Cir. 2004).

Following the sentencing hearing, Plaintiff went downstairs in the courthouse as instructed to meet with his probation officer, Defendant Parling, who informed him that he would not be able to leave Michigan to return to his job or home in Illinois. Plaintiff explained to Parling that his life was in Illinois, his son's school was there and that his job was there. (Pl.'s Resp., Ex. 2, Deposition of John Fleming, July10, 2009, p. 13-14.) Angered that he was going to be unable to return to Illinois, Plaintiff went back up to Judge Morris and asked to retract his plea. Plaintiff states that he explained his situation to the Judge, stating that Parling would not let him return to Illinois but that he could never pay the judgment if he was not allowed to return to his job. Plaintiff states that the Judge and Parling argued but that the Judge agreed with him and told his lawyer to write something up allowing him to return to Illinois. (Pl.'s Resp. Ex. 2, Fleming Dep. 14-15.) His lawyer prepared an "Order Regarding Motion to Allow Defendant to Return to Home State" which Judge Morris signed that day. (Defs.'s Mot. Ex. 1, 78.) The Order stated that Defendant "be allowed to return to State of Illinois, but must comply with probation in signing probation order and completing interstate compact paperwork." (*Id.*) That same day, Judge Morris signed the Judgment of Sentence which indicated: "Def. may return to State of Illinois." (Pl.'s Resp. Ex. 1.) Plaintiff states that he left to return to Illinois later that day and that his attorney told him good luck and to be sure to hang on to the papers the Judge signed allowing him to return to Illinois. (Pl.'s Resp. Ex. 2, Fleming Dep. 18.) On August 16, 2004, Judge Morris signed the Order of Probation, placing Plaintiff on five years' probation for failure to pay child support and ordering him to pay $26,000 in restitution. (Defs.'s Mot. Ex. 1, 76.)

Defendants have a different version of what happened following the second hearing before Judge Morris on August 9, 2004, and state that Nelson instructed Plaintiff after the hearing to report

the day after sentencing to sign an order and complete the interstate compact paperwork. (Pl.'s Resp. Ex. 4 p. 9.) The Michigan Department of Corrections Case Notes ("case notes") from 8/16/04 day state that Plaintiff was "argumentative with clerical and supervisor" and never reported as instructed. (*Id*.) The case notes further state that Plaintiff called Parling and told her he needed to go back to Illinois and get to work and she told him that he had already missed his first reporting date and that he needed to follow procedure, and report to probation at 8am on August 18, 2004. The case notes state that Plaintiff's public defender called Parling to see if something could be worked out and she said no, Plaintiff had to report as instructed. (*Id*.) The case notes indicate that Plaintiff did report on August 18, 2004 but did not pay the $100 fee required to initiate the interstate transfer and was told again that he could not leave the state until the interstate compact paperwork was completed. Plaintiff was told to report again on September 2, 2004. (Pl.'s Resp. Ex. 4 p. 8.)

Plaintiff testified that it was his understanding that the Judge's Order required him to take a DNA test, apply for and pay $100 to obtain an interstate transfer and that he could return that day and go back to work, which he claims he did. His understanding was that when the interstate transfer came through he may have to come back to complete some paperwork but that, in the meantime, he could return to Illinois. (Pl.'s Resp. Ex. 2, Fleming Dep. 15.) Plaintiff testified at his deposition that he paid the $100 fee before he left to go back to Illinois but this is contradicted by the probation case notes which indicate that as of November 15, 2004, Plaintiff acknowledged that he had not paid the $100 transfer fee as of that date. (*Id.* at 22; Pl.'s Resp. Ex. 4 p. 7.) Plaintiff admitted that he understood that his probation had not been transferred to Illinois and that he had to take time off of work for hearings and to attend meetings with Parling back in Michigan, which created problems with his employer in Illinois who began training someone else to take Plaintiff's

job.  (*Id*. at 21.)

In early September, 2004, Plaintiff decided to return to Michigan to live with his grandmother and try to find work.  (*Id*. at 24-25.)  Plaintiff testified that he knew Parling was upset because he had left the state and that he "felt bad" that Parling had argued with the Judge and he wanted to return to Michigan to make "things go smooth as possible."  (*Id*. at 25.)  Because Plaintiff had moved to Wayne County, his Michigan probation was transferred to another probation officer, Brannan, and he was to begin reporting to her as instructed.  (Pl.'s Resp. Ex. 4, p. 8.)  Plaintiff began reporting to Brannan as instructed and reported to her on September 27, 2004, October 18, 2004 and November 15, 2004.  (*Id*. at 6, 7, 8.)  During this same period of time, Brannan was receiving numerous phone calls from Plaintiff's ex-wife complaining that Plaintiff was not paying the $100/month in restitution as he was ordered to do.  (*Id*. at 5, 7.)

On November 15, 2004, the Michigan Probation Department case notes indicate that Plaintiff stated he was returning to Illinois although he was told that this would be a violation of his parole.  (*Id*. at 7.)  The case notes indicate that on December 2, 2004, Plaintiff's ex-wife called Parling (Washtenaw County Probation) and informed her that Plaintiff may possibly have left the state and complained that he had only paid $300 and asking what could be done to enforce the court's orders.  (*Id*.)  The case notes indicate that Parling returned the message and informed Plaintiff's ex-wife that Parling had moved up Plaintiff's report date and that if he had in fact left the state, she would issue a bench warrant for his arrest if he did not report.  (*Id*.)  Throughout December and January, Plaintiff, still in Michigan, continued to report and fail to report to agent Brannan (Wayne County Probation) and remained unemployed.  (*Id*. at 6.)

On January 6, 2005, Parling advised Brannan that she had scheduled a show cause hearing

on Plaintiff's non-payment of his restitution for February 14, 2005 and asked Brannan to inform Plaintiff. (*Id*. at 6.) The case notes indicate that Brannan did inform Plaintiff of the show cause date when he reported on January 10, 2005. (*Id.*) On January 11, 2005, Parling received an email from Plaintiff's ex-wife, still complaining that Plaintiff was not paying her and asking for a response. On January 13, 2005, Parling responded to Plaintiff's ex-wife and explained that Brannan was now Plaintiff's supervising agent, giving Brannan's contact information and explaining that Plaintiff was scheduled to appear before Judge Morris on February 14, 2005 to show cause why he has not complied with the conditions of his probation. (*Id*. at 5.)

Plaintiff did not report for the show cause and did not report as instructed on February 28, 2005. (*Id.* at 4.) Plaintiff did report on March 7, 2005 and stated that he did not know he was supposed to have reported on February 28, 2005 and advised that he was still unemployed and had not made child support payments for approximately six weeks. (*Id.*) The case notes indicate that there was a show cause hearing on March 14, 2005 at which time the friend of the court explained that Plaintiff's ex-wife decided to forgo the balance of the restitution owed to her. The case notes indicate that this did not satisfy the entire amount owed to the state, however, and that an updated restitution and amended order would need to be completed. (*Id*.)

On March 24, 2005, Plaintiff met with Parling, even though he was still being supervised by Brannan, and paid the $100 transfer fee and completed his interstate transfer paperwork. (Defs.'s Mot. Ex. 6, pp. 8-9.) Parling also completed a Travel Permit which gave Plaintiff permission to travel to Illinois and did not enter a return date. (*Id*. at 15.) The Travel Permit notes that Plaintiff was a resident in Illinois at the time he was sentenced and his travel date is listed as April 8, 2005 with the return date "na." Parling testified in her deposition that despite what appeared on the Travel

Permit, Plaintiff's transfer to Illinois would not be complete until his Michigan probation officer received reporting instructions from his Illinois probation officer, which Nelson testified could take months at that point in time. (Defs.'s Mot. Ex. 5, Parling Dep. 174-175, 196-197; Ex. 7, Nelson Dep. 39-40.) Thus, even though the paperwork was complete on March 24, 2005, and the transfer fee had been paid, Plaintiff's transfer to Illinois probation was not complete.

On April 6, 2005, Plaintiff left a message with Parling stating that he was told he no longer had to report in person and that he was in Illinois and wanted to know what was taking so long. (Pl.'s Resp. Ex. 4, p. 4.) On April 6, 2005 contact was made with Plaintiff's girlfriend's mother who stated that Plaintiff was in Illinois and his case had been transferred. (*Id*. at 3.) Plaintiff failed to report in Michigan on April 8, 2005 and Brannan left him a message informing him that he was not to leave Michigan without reporting instructions and informing him that Parling never told him he no longer had to report in Michigan and advising him to return to Michigan. (*Id*.)

On April 12, 2005 Plaintiff, who had returned to Michigan, phoned his probation officer after hours and advised that he was staying with his son and his daughter, at two different addresses, in Ypsilanti, Michigan and waiting for his reporting instructions. (*Id*.) On April 13, 2005 Plaintiff reported without instructions to do so and stated that he was living in Ypsilanti. Plaintiff was advised that he was just "doing what he wants" and was advised "that probation does not work this way." Plaintiff was still not making payments. (*Id*.) On April 18, 2005 Plaintiff telephoned and gave an address in Ypsilanti, Michigan. Also on that day, Brannan contacted Washtenaw County Court Services who advised that the balance owed by Plaintiff was $25,200 in restitution. (*Id*.)

Because Plaintiff was now living in Washtenaw County, his probation was transferred back to Parling. On April 27, 2005 Plaintiff left a message with Parling gave another address in Ypsilanti,

Michigan and gave a cell phone number.  (*Id.*)  On May 4, 17 and 18, 2005, Parling attempted to visit Plaintiff at the addresses he had given without success.  On May 19, 2005, Plaintiff reported and stated that he had given the wrong numbers and was given a verbal warning for giving the probation department "a run around" and was threatened with another court appearance if he was unable to provide accurate information.  (*Id.* at 2.)  On June 10, 2005, Parling attempted to visit the last given address but the buzzer was damaged and she left a card.  Despite numerous attempts, no contact was made with Plaintiff for the remainder of June and into early July.  (*Id.*)

Plaintiff was supposed to report on June 30, 2005 but did not and was noted as a violation for failure to report.  Plaintiff also failed to report on July 7, 2005 and was violated again and authorization was issued to proceed with a warrant as per policy.  (Defs.'s Mot. Ex. 5, Parling Dep. 61; Ex. 7 Nelson Dep. 133; Ex. 1 p. 5; Ex. 8; Ex. 9.)  Parling completed an affidavit in support of the warrant, adding to the June 30, 2005 and July 7, 2005 failures to report other violations of additional conditions based upon a review of Plaintiff's case notes, i.e. three previous failures to report, failure to obtain permission to change residency, failure to make himself available for residency verification, failure to make monthly payments and failure to provide employment verification.  (Defs.'s Mot. Ex. 1, p. 5-6.)  Nelson approved the bench warrant request.  (Defs.'s Mot. Ex. 10, Nelson Aff. ¶ 3.)  The office received the signed warrant back on August 4, 2005.  (Defs.'s Mot. Ex. 3, p. 1.)

Plaintiff recalls these months of May and June differently, stating that Parling told Plaintiff in early April to report to Cook County Probation in Illinois, although he wasn't sure if Parling had given him a name or just told him to report there.  (Pl.'s Resp. Ex. 2, Fleming Dep. 32-35.)  He testified that Parling did not tell him in early April that he would still have to meet with her or that

he had to attend any meetings with her.  (*Id.* at 35.)  Plaintiff testified that he did not remember reporting to Parling in April or May but he did remember at some point giving her the residence addresses in Ypsilanti before he left again for Illinois.  (*Id.* at 35-37.)  Plaintiff testified that Parling never told him that he still had to report to her and that she actually wished him luck after their meeting in March when he signed the transfer the papers.  Plaintiff testified that he moved back to Illinois in early April and resumed work with Alpine Paving and was still having his wages garnished by Washtenaw County.  (*Id.* at 39-40.)

On June 17, 2005, without informing the Michigan Probation Department, Plaintiff began reporting to Cook County Illinois probation officer Cunningham.  (Defs.'s Mot. Ex. 6, p.6.) Washtenaw County records indicate that the official reply to Plaintiff's transfer request, which confirmed that Plaintiff had begun reporting there on June 17, 2005, was received in Washtenaw County on July 14, 2005.  (Defs.'s Mot. Ex. 6, p. 5.)  Both Parling and Nelson testified that they never received or observed this document.  (Defs.'s Mot. Ex. 5, Parling Dep. 145-146, 184; Ex. 7, Nelson Dep. 140-142; Ex. 11, Parling Aff. ¶ 5; Ex. 10, Nelson Aff. ¶ 5.)  Plaintiff continued to report in Cook County throughout July, August and September.  (Defs.'s Mot. Ex. 12, Cook County Probation Records.)  Plaintiff resumed work with Alpine Paving on June 20, 2005.  (Pl.'s Resp. Ex. 29.)

On September 30, 2005, Plaintiff was arrested in Lynwood, Illinois on the warrant that had been issued in Washtenaw County on or about July 29, 2005 for various violations of Plaintiff's probation.  Cook County declined to further enforce the warrant based on documentation of his transfer provided by Plaintiff.  Plaintiff was released on October 3, 2005.    (Pl.'s Resp. Ex. 2, Fleming Dep. 27-29, 44; Defs.'s Mot. Ex. 12, Entries dated 10/03/05, 10/12/05.)

The day after he was released from jail in Cook County, Plaintiff placed several calls to the Washtenaw County Probation Department trying to find out why he had been arrested. (Pl.'s Resp. Ex. 24, Phone Records; Ex. 10, Nelson Dep. 29.) The calls were received by Nelson, as Parling was on an extended leave of absence. (Pl.'s Resp. Ex. 10, Nelson Dep. 29; Defs.'s Mot. Ex. 5, Parling Dep. 141.) Parling, therefore, never spoke to Plaintiff. Nelson did not make a note of these calls. (*Id.* 30.) When she received Plaintiff's calls, Nelson reviewed the file and the notes. Although against policy, Nelson called the agent in Illinois and verified that Plaintiff had in fact been reporting in Cook County, Illinois. (Defs.'s Mot. Ex. 7, Nelson Dep. 59-60, 119-120, 122.) Nelson did not cancel the warrant, however, because there was no indication in the file that Plaintiff had permission to be reporting in Illinois. (Pl.'s Resp. Ex. 10, Nelson Dep. 31-32, 35.) The file as Nelson reviewed it did not contain the interstate compact paperwork, which would have contained the Reply to Transfer Request which confirmed that Plaintiff's interstate transfer had been accepted and that he was reporting in Illinois. (*Id.* at 33.) The only document contained in the file was a Case Closure stating that a warrant had been issued. The file as Nelson reviewed it indicated that Plaintiff was living in Wayne County and Washtenaw County and that probation was constantly trying to verify his address. It appeared to Nelson from her review of the file, which in retrospect she admits was incomplete, that the MDOC probation department did not know where Plaintiff was. (*Id*. 32-33.) Nelson said it was not normal for the file not to contain the interstate compact transfer paperwork and that the sole Case Closure document appearing in the file did not make sense to her. She decided that she needed to conduct further investigation. (*Id*. 32-35.)

Nelson testified that she told Plaintiff she would continue to investigate the matter and not to drive back to Michigan if it was going to jeopardize his job. Plaintiff told Nelson he was coming

back to Michigan and Nelson said the choice was Plaintiff's but it wasn't worth risking his job and that they might be able to resolve it without Plaintiff coming back. (Defs.'s Mot. Ex. 7, Nelson Dep. 102.)

Plaintiff has a very different recollection of this conversation and states unequivocally that Nelson told him "get your butt back here." (Pl.'s Resp. Ex. 2, Fleming Dep. 47-49.) Plaintiff did return to Michigan of his own accord, appeared in Washtenaw County Circuit Court on October 31, 2005 and was arraigned before Judge Melinda Morris. Plaintiff testified that he "turned himself in to the [Washtenaw County] jail" at about nine o'clock in the morning, appeared in court around 1:00 p.m. and was released immediately after the hearing with the charges dismissed. (Pl.'s Resp. Ex. 2, Fleming Dep. 50.) There is no suggestion that Nelson or Parling was involved when Plaintiff appeared in court on the morning of October 31, 2005.

On November 3, 2005, after Plaintiff had been released on the warrant and the charges dismissed, Parling submitted a Petition and Order for Amendment of Order of Probation, stating that the bench warrant had been dismissed and that probation was continued with all original terms and conditions." This Order was signed on December 13, 2005 by Judge Morris. (Defs.'s Mot. Ex. 1, p. 4.) On January 17, 2006, Washtenaw County probation, Wendy Becker, reviewed a tape of the video recorded hearing on October 31, 2005 during which the judge had ordered that Plaintiff's probation be dismissed and the offender discharged. (Pl.'s Resp. Ex. 4, p. 1.) On January 18, 2006, a Motion for Order for Discharge From Probation was submitted by probation officer Ken Whitman for Agent S. Parling. (Defs.'s Mot. Ex. 1, p. 3.) This Order was entered on January 19, 2006 by Judge Morris and the probation violations were dismissed and the term of probation was closed. (*Id;* Pl.'s Resp. Ex. 4, p. 1.) Plaintiff states that, because of Parling's November 3, 2005 Petition stating

that probation was continued, Plaintiff had to continue to report in Illinois in November, December and January even though his Michigan probation had been discharged on October 31, 2005. (Defs.'s Mot. Ex. 12, Cook County Probation Notes, Entries dated 11/03/05-2/06/06.) Plaintiff also provides documentation from his employer, Alpine Paving, where he was employed before he returned to Michigan to clear up the warrant, that it was with deep regret that he had to terminate Plaintiff when Plaintiff again left his job on October 12, 2005 to return to Michigan for yet another court appearance. (Pl.'s Resp. Ex. 29.)

## II.    STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Chelates Corp. v. Citrate*, 477 U.S. 317, 322 (1986). "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323; *See also Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)

(quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Chelates*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires the non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

## III.    ANALYSIS

The controlling  issue in Plaintiff's § 1983 claim against the Defendants is defined by the specific terms of Plaintiff's Complaint:  whether there was probable cause for Parling to request and Nelson to approve a warrant for Plaintiff's arrest for violation of his probation on or about July 29, 2005 and whether there was probable cause to continue the warrant after Plaintiff was arrested in

Illinois on September 30, 2005. Plaintiff alleges that Parling and Nelson lacked probable cause to request and approve the warrant and lacked probable cause to continue the warrant and to require Plaintiff to return to Michigan in October, 2005 to respond to the warrant. Plaintiff states that he has offered substantial evidence that Defendants have violated Plaintiff's rights guaranteed by the Fourth Amendment, which requires that arrest warrants be issued only upon a showing of probable cause.

Defendants respond that there is no genuine issue of fact that Parling had probable cause to request the warrant and that Nelson had probable cause to approve the warrant. Defendants also deny that they required Plaintiff to return to Michigan in October, 2005 to clear up the warrant, but given Plaintiff's averments to the contrary, and taking the facts in the light most favorable to the Plaintiff, that issue remains viable for purposes of this motion. Defendants argue that, even assuming that Plaintiff can establish a constitutional violation, i.e. a lack of probable cause either to request and approve the warrant or to continue to enforce the warrant in October, 2005, they are entitled to qualified immunity because Plaintiff cannot make a substantial showing that Parling or Nelson stated deliberate falsehoods or showed reckless disregard for the truth or that the alleged false information was material to the finding of probable cause.

Plaintiff brings his claims pursuant to 42 U.S.C. § 1983. To prevail on his § 1983 claim, Plaintiff must establish that he was deprived of a right "'secured by the Constitution and the laws of the United States' by one acting under of color of law." *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999) (quoting *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155-56 (1978)). However, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Two questions thus arise in this context: Did the government officials violate a constitutional guarantee? And, if so, did the violation involve a clearly-established constitutional right of which a reasonable officer would have been aware? In the absence of an affirmative answer to both questions, the constitutional tort claims must be dismissed as a matter of law." *Williams ex rel. Allen v. Cambridge Bd. Of Educ.*, 370 F.3d 630, 636 (6th Cir. 2005) (internal citation and quotation marks omitted.).

A government official is "entitled to rely on a judicially secured warrant for immunity from a § 1983 action for illegal search and seizure unless the warrant is so lacking in indicia of probable cause, that official belief in the existence of probable cause is unreasonable." *Yancey v. Carroll County*, 876 F.2d 1238, 1243 (6th Cir. 1989). "An action under § 1983 does lie against an officer who obtains an invalid search warrant by making, in his affidavit, material false statements either knowingly or in reckless disregard for the truth." *Hill v. McIntyre,* 884 F.2d 271, 275 (6th Cir. 1989).

## A.     False Arrest

The parties in this case agree that the right to be free from arrest without probable cause is clearly established and dispute only whether Parling and Nelson lacked probable cause and, if they did, whether their conduct was nonetheless objectively reasonable under the circumstances. The parties further agree that to overcome an officer's entitlement to qualified immunity on the issue of probable cause, the Plaintiff must make a substantial showing that the Defendants stated a deliberate falsehood or showed reckless disregard for the truth and that the allegedly false information was material to a finding of probable cause. *Hill, supra* at 275.

The dispute between these parties centers on the July 29, 2005 Affidavit completed by Parling and approved by Nelson, which provides in pertinent part as follows:

> Petitioner [Parling] requests that a bench warrant be issued and Fleming, John Allen be arrested and brought before the Court for probation revocation proceedings for the following reasons:
>
> 1. Contrary to condition #3, the defendant failed to report on 7/7/05, 6/30/05, 4/8/05, 4/5/05 and 2/2/05.
>
> 2. Contrary to condition #4, the defendant failed to obtain permission prior to changing residence on 4/18/05. Furthermore, he provided incorrect information in regards to his residence. On 4/27/05, he reported that he resided at 1926 Washtenaw Avenue, #214, Ypsilanti, Michigan, however the defendant later reported reported [sic] he resided at 32 N. Huron St., Apt. #1, Ypsilanti, Michigan. Then on 6/10/05, he reported yet another address of 23 N. Huron St. Apt. #1, Ypsilanti, Michigan. Furthermore, the defendant never made himself available for residency verification and never responded to the business cards left at his reported address, despite having been instructed to make himself available for residency verification.
>
> 3. Contrary to condition #9, the defendant's last payment received was on 1/7/05 in the amount of $200.00. He has failed to address his costs by failing to make monthly payments. He currently is $4200 in arrears.
>
> 4. Contrary to condition #8, the defendant has failed to provide employement [sic] verification.

(Pl.'s Resp. Ex. 13.)

Plaintiff argues that on July 29, 2005, the date that the warrant was approved, both Parling and Nelson must have known that Plaintiff's Transfer Request had been approved and knew that Plaintiff had been reporting in Illinois to Cook County probation. In fact, Plaintiff's Transfer Request was approved by Illinois probation on June 14, 2005 and he began reporting in Cook County Illinois on June 17, 2005. (Defs.'s Mot. Ex. 6, Interstate Compact Transfer Paperwork, Reply to Transfer Request p. 5; Defs.'s Mot. Ex. 12.) The Reply to Transfer Request indicates that it was received by Washtenaw County Probation on July 14, 2005, but Parling and Nelson testified

that they never received a copy of this document and had no knowledge that Plaintiff had been reporting in Illinois. (Defs.'s Mot. Ex. 7, Nelson Dep. 141-142; Defs.'s Mot. Ex 5, Parling Dep. 177-178; Pl.'s Resp. Ex. 12, Parling Dep. 145-146; Defs.'s Mot. Ex. 10, Nelson Aff. ¶¶ 4, 5; Defs.'s Mot. Ex. 11, Parling Aff. ¶¶ 4,5.) Parling specifically testified that her last contact with Plaintiff was at the end of June and that she had no knowledge that Plaintiff was reporting in Illinois. Parling testified that Plaintiff never called and said "I'm reporting in Illinois," and that she was never contacted by anyone in probation in Cook County and that, most importantly, she never received reporting instructions from Cook County probation. Parling testified that as far as she was concerned, at the time she approved the warrant, Plaintiff was still under the jurisdiction of the MDOC. (Defs.'s Mot. Ex. 5, Parling Dep. 177-179.)

**1. Probable Cause to support Parling's July, 2005 Affidavit**

Affidavit Paragraph #1- Plaintiff's Failures to Report

2/2/05: Parling testified in her deposition that the 2/2/05 date on the Affidavit was a typographical error and that the date should have been 2/28/05. (Pl.'s Resp. Ex. 12, Parling Dep. 124-125. ) Agent Brannan's case notes indicate that Plaintiff failed to report on February 28, 2005. The case notes also indicate that Plaintiff was informed when he reported in person January 10, 2005 that his next report date was 2/28/05. (Pl.'s Resp. Ex. 4, p. 6.) Plaintiff does not deny that he failed to report on 2/28/05 but states that he did not know that he had to report that date and that he did report on March 7, 2005 and this cured his failure to report on 2/28/05. However, officer Nelson testified that the fact that Plaintiff reported on March 7, 2005 would not necessarily cure the failure to report on 2/28/05 because he would not necessarily have "made up" the missed report if he were just reporting again for March. (Defs.'s Mot. Ex. 7, Nelson Dep. 21.) Nelson testified also, that if

a probationer were exhibiting a pattern of missing scheduled report dates, even though they may have made them up, they could still be violated for missing them because they consistently missed scheduled reporting dates. In fact, on 3/1/05, an entry in the case notes indicates that Plaintiff missed his 2/28/05 report date and would be verbally warned about his reporting habits, indicating such a pattern. (Pl.'s Resp. Ex. 4, p. 4.) Plaintiff does not deny that he had notice of the 2/28/05 report date and does not deny that he did not report on 2/28/05. His pattern of non-reporting was documented in Brannan's case notes shortly thereafter. The Court concludes that Parling, reviewing Brannan's case notes regarding Plaintiff's failure to report on 2/28/05, had probable cause to include this failure to report on the Affidavit.

4/5/05: Again, Parling testified in her deposition that 4/5/05 was also a typographical error and should have been 4/4/05. (Pl.'s Resp. Ex. 12, Parling Dep. 125. ) When Plaintiff appeared in person on March 7, 2005, Brannan's case notes indicate, he was informed that his next report date was 4/4/05. (Pl.'s Resp. Ex. 4, p. 4.) Plaintiff does not dispute that he had notice of this date or that he failed to report on this date. In fact, Plaintiff called and left a message on 4/6/08 stating that he was in Illinois and no longer had to report in person. Despite Plaintiff's subjective belief that he no longer had to report in person, the fact is that he had notice of the 4/4/05 report date and failed to appear. The Court concludes that Parling had probable cause to include this failure to report on the Affidavit.

4/8/05: The case notes indicate a failure to report on 4/8/05 although the case notes do not specifically indicate that Plaintiff was given notice to report on 4/8/05. However, the notes do indicate that a home visit was made on 4/5/05 and contact was made with Plaintiff's girlfriend's mother who stated that Plaintiff was in Chicago and that his case had been transferred. (Pl.'s Resp.

Ex. 4, p. 3.) Brannan's case notes indicate that a failure to report letter was left at the home on April 5, 2005, which Parling testified would have contained, as a matter of practice, the next scheduled report date of April 8, 2005. (Pl.'s Resp. Ex. 12, Parling Dep. 128.) Plaintiff argues that 4/8/05 is the date that Parling had stated on Plaintiff's Travel Permit that he was permitted to leave the state to travel to Illinois. Plaintiff argues that he cannot have been expected to report in both Michigan and Illinois on the same date. Parling explains in her deposition that the April 8, 2005 departure date on the Travel Permit was entered when she thought that Plaintiff would be treated as an expedited transfer, which he was not. (Defs.'s Mot. Ex. 5, Parling Dep. 169-170, 173; Pl.'s Mot. Ex. 10, Nelson Dep. 53.) Parling testified that Plaintiff was not permitted to leave the state until his interstate transfer was accepted, which normally takes a minimum of 45 days to occur, and reporting instructions received from the transfer state. Parling testified that this never happened in Plaintiff's case and that the Travel Permit did not constitute an acceptance of transfer and that Plaintiff was still required to report in Michigan, despite the information on the travel permit. (Defs.'s Mot. Ex. 5, Parling Dep. 173-175.) That the Travel Permit did not authorize Plaintiff to report elsewhere is also validated by Nelson's testimony, who stated that the Travel Permit did not constitute reporting instructions and that in fact the Notice of Departure, which was filled out by Parling on March 24, 2005 as part of Plaintiff's interstate transfer request paperwork, did not specify any reporting instructions. (Defs.'s Mot. Ex. 7, Nelson Dep. 105-108; Pl.'s Resp. Ex. 19.) This is further supported by case notes dated 4/8/05, the date that Plaintiff failed to report, which indicate that a phone call was placed to Plaintiff informing him that he was not to leave Michigan without reporting instructions and that "per Agent Parling, she never told him he no longer had to report in Michigan. Advised he must return to Michigan." (Pl.'s Resp. Ex. 4, p.3.) Thus, despite Plaintiff's alleged

belief that he was free to travel to Illinois, there is no evidence to contradict the fact that Michigan had not received reporting instructions and that Plaintiff was required to, but failed to, report on that date (in fact he acknowledges that he was in Chicago). The Court concludes that Parling had probable cause to include this failed report date in the Affidavit.

Plaintiff also claims that his 4/4/05 and 4/8/05 failures to report were cured by later reporting dates but, as explained by Nelson in her deposition in response to a series of hypothetical, not real, instances of failures to report, there are several reasons why reporting for a later scheduled reporting date does not necessarily cure a prior failure to report. (Defs.'s Mot. Ex. 7, Nelson Dep. 20-21.) Parling also testified that she viewed a missed reporting date as a violation and that any subsequent reporting did not cure a missed reporting date. (Defs.'s Mot. Ex. 5, Parling Dep. 15-17.) There are no case notes to support the allegation that these missed dates were cured. It was Parling's belief, which she testified was communicated to Plaintiff, that Plaintiff was to stay in Michigan, and continue to report in Michigan, until he received reporting instructions from Illinois.

Importantly, a case note entry dated 4/13/05 confirms that Plaintiff fully understood at this point that his reporting instructions had not been received from Illinois and that he was still required to report in Michigan. This 4/13/05 case note entry states that a telephone call was received from Plaintiff in which he indicated that he was in Michigan and was waiting for reporting instructions so that he could return to Illinois. (Pl.'s Resp. Ex. 4, p. 3.) When completing the Affidavit, Parling was reviewing Brannan's case notes and was not personally involved in the recording of these failures to report. As to the failures to report on 2/28/05, 4/4/05 and 4/8/05, the Court concludes that Parling had probable cause to include them in her Affidavit. Plaintiff offers no evidence that Michigan procedures treat a later report as a cure for missing a report date.

6/30/05:  As to this reporting date, Plaintiff states that he had no knowledge of this reporting date and that he was reporting in Illinois at that time.  However, the case notes indicate that Plaintiff reported in person on May 19, 2005 and that he was given notice that his next report date was 6/30/05.  In fact, the case notes indicate that Plaintiff reported sporadically throughout April, May and June, and in fact gave multiple different addresses in Michigan which made it difficult for probation to keep track of and contact him.  On April 13, 2005, the case notes indicate that Plaintiff reported, although he was not scheduled to report on that date.  He reported that he was living in Ypsilanti but did not give addresses.  He was informed that he had to provide an address and that "he is not in compliance and just doing what he wants to do - advised that probation does not work this way."  (Pl.'s Resp. Ex. 4, p. 3.)  The case notes from April 13, 2005 also indicate that Plaintiff was not making any payments as required.  For the months of May and June, the case notes indicate that Plaintiff was very difficult to locate, giving addresses that he admits were wrong and on May 19, 2005 was given a verbal warning "for failing to provide correct address and informed [ ] that he has been giving the prb dept a run around and that if he can not provide updated and correct information he will have another court appearance scheduled."  The case notes indicate that Plaintiff was giving Michigan contact information to probation during this period, sometimes reporting, and that he was given notice to report on June 30, 2005.  Plaintiff does not contest this and admits that he made mistakes or moved before confirmation of his address could be made.  Plaintiff does not deny that he did not report on June 30, 2005.  The Court concludes that Parling had probable cause to include this failure to report in her Affidavit.[2]

---

[2] Plaintiff states that he reported in Illinois on April 15, 2005 and June 17, 2005.  But Plaintiff had been told, and clearly understood given the fact that he returned to Michigan in April and gave numerous Michigan addresses and intermittently reported in Michigan, that he was still obligated

7/7/05: Plaintiff denies knowledge that he was supposed to report on this date and the case notes do not indicate that Plaintiff was informed of this report date. Parling testified that she made a no contact home visit on July 1, 2005 and left a letter indicating a next report date of July 7, 2005. There is no evidence to rebut Parling's testimony that she left such a letter or that it contained the report date of 7/7/05. There is no question that Washtenaw County had not received the Acceptance of Transfer at this time. The Court concludes that Parling had probable cause to include this failure to report in her Affidavit.

Affidavit Paragraph # 2 - Failure to Obtain Permission to Change Addresses/Providing False Information

This Paragraph contains an accurate representation of Plaintiff's several moves between residences when he returned to Michigan in April and lived with various family members and friends. The case notes confirm, and Plaintiff does not deny, that he moved frequently during this time, did not provide notice of his address changes and when he did provide notice, sometimes gave the wrong address. (Pl.'s Resp. Ex. 2, Fleming Dep. 35-37.) On April 13, 2005 Brannan's case notes indicate that Plaintiff called and stated that he was staying in Ypsilanti and was waiting for reporting instructions so he could return to Illinois. Plaintiff continued to report various addresses in April and May, last indicating on June 10, 2005 that he had a new address in Ypsilanti. (Pl.'s

---

to report in Michigan. Plaintiff states that Parling's Affidavit contained deliberately false information as to the June 30, 2005 failure to report because she must have known that Plaintiff was reporting in Illinois because Illinois sent his Acceptance of Transfer on June 17, 2005. However, as discussed above and later in this Opinion, there is no evidence to suggest that Parling actually had knowledge at this time that Illinois had accepted Plaintiff's transfer. In fact the Acceptance of Transfer indicates that it wasn't received by Washtenaw County probation until July 14, 2005. Even assuming, however, that Parling did know that Plaintiff was reporting in Illinois, there is no question that Michigan had not received the Acceptance of Transfer as of June 30, 2005 and therefore Plaintiff was still obligated to report as scheduled in Michigan. His failures to do so were violations.

Resp. Ex. 4, p. 2.) The facts set forth in this paragraph of the Affidavit are taken directly from the case notes, which Plaintiff has not offered any evidence to rebut. The Court concludes that Parling had probable cause to include this violation in her Affidavit.[3]

Affidavit Paragraph #3 - Failure to Make Monthly Payments

Numerous entries in the case notes support this paragraph of the Affidavit and in fact Plaintiff admitted in his deposition that he failed to make payments as required by his order of probation. (Pl.'s Resp. Ex. 2, Fleming Dep. 66; Defs.'s Mot. Ex. 2, Fleming Dep. 61.) However, Plaintiff claims that at the time Parling swore to the facts in this Affidavit, she knew that Plaintiff's ex-wife had signed off on the entire $26,000 restitution amount as of March 14, 2005. In fact, a review of the case notes would have provided Parling with this information although the case notes also indicate, in an entry dated 3/16/05, that Plaintiff continued to owe the state approximately $30,000 and that probation needed to get an updated restitution and amended order. (Pl.'s Resp. Ex. 4, p. 4.) Defendants provide records from the Michigan Child Support Enforcement System, Court

---

[3] While Plaintiff states in his deposition that after the March 24, 2005 meeting when he completed his interstate transfer paperwork, Parling wished him luck and never stated that he was still obligated to report in Michigan, the record evidence supports Defendants' position that the transfer was not in fact accomplished in early April, 2005. Plaintiff concedes in his Response that he moved back to Michigan in May and June because Parling "ordered" him back. (Pl.'s Resp. 16-17.) It appears that Parling may initially have treated Plaintiff's transfer as an expedited transfer and may initially have believed that Plaintiff would be clear to leave Michigan on April 8, 2005, as she indicated in the Travel Permit. (Pl.'s Resp. Ex. 10, Nelson Dep. 53.) This scenario, however, was based on an assumption that between March 24, 2005 when they filled out this paperwork together, and April 8, 2005, Parling would receive reporting instructions from Illinois. This never happened and when Plaintiff failed to report in early April, he was informed that his reporting instructions had not come through and that he was to return and report in Michigan. (Pl.'s Resp. Ex. 12, Parling Dep. 77-85.) Although Plaintiff disagreed that he was required to be in Michigan, he does not dispute the fact that he was told to return, he did return and that upon his return he was "making mistakes" and "moving before confirmation could be obtained." (*Id*.) At this point, the record fully supports the fact that Plaintiff was not complying with the conditions of his probation, as stated in the Affidavit. (Pl.'s Resp. Ex. 10, Nelson Dep. 52-53.)

Order Information Sheet, which indicate that in fact on or about the date that Parling prepared the Affidavit, Plaintiff still owed $33,704.84. (Defs.'s Reply, Ex. 3.)

But Plaintiff argues that Parling never did seek an amended order of probation and argues that she could not have done so *ex parte* and should not have based her violation on a condition that was not a part of the original order of probation. Condition #9, which Parling states in her Affidavit that Plaintiff had violated, provides as follows: "You must pay restitution in the amount of $26,000 as follows: $100 per week." At the time that Parling swore to this Affidavit, the case notes revealed that Plaintiff's ex-wife had forgiven the $26,000 restitution payment that was the subject of the condition of the probation order that Parling claimed Plaintiff had violated. As to Condition #9, Parling should have known when she swore to the Affidavit that Plaintiff no longer owed this amount. In her deposition, Parling explains that she knew at the time she swore the Affidavit that the $26,000 had been forgiven but that it was her belief that there was still a balance owing to the state. (Pl.'s Resp. Ex. 12, Parling Dep. 26-28.) However, Parling also testified that her department should have done an amended order and conceded that no such order appeared in the file. (*Id*. 35-37.) The Request for Reporting Instructions completed by Parling on March 24, 2005 confirms this as it states that: "Also [Plaintiff's] restitution will be decreased given that his ex-wife signed off on what he owes her. He continues to owe the State of Michigan. An inquiry has been made with the Friend of the Court to determine how much restitution will be recinded [sic]." (Pl.'s Resp. Ex. 18.) Although the evidence suggests that at the time Parling completed the Affidavit, the Michigan Child Support Enforcement System records indicated that Plaintiff still owed the state money, it is not clear that this amount was owed on the existing order of probation, as set forth in Condition #9. Therefore, the Court concludes that there is a genuine issue of fact as to whether Parling had

probable cause to include this violation in her Affidavit.

Affidavit Paragraph #4 - Failure to Provide Employment Verification

Parling testified in her deposition that she based this violation on the absence in the case notes she reviewed of any type of employment verification provided by Plaintiff. She testified that had there been employment she would have expected to see pay stubs, or letters from employers. If Plaintiff had been unemployed, she would have expected to see verifications of employment searches, which she did not find in the case notes. (Defs.'s Reply, Ex. 1, Fleming Dep. 161-162.) Parling testified that in violating Plaintiff for this condition, she relied entirely on the absence of such information in the case notes. (*Id.*) Parling was confronted in her deposition with the fact that she had verified employment for Plaintiff on March 24, 2005 at Dutch Farms as a truck driver. (Pl.'s Resp. Ex. 12, Parling Dep. 119, 122-24; Pl.'s Resp. Ex. 12, Parling Dep. Ex. 18, March 24, 2005 Request for Reporting Instructions.) But, as explained earlier, this verification related to employment in Illinois which Plaintiff would have begun if his transfer had been approved and accepted. This did not happen and Plaintiff's failure to provide verification of employment, or of efforts to secure employment, in Michigan, where he was still required to report, was a violation. As Defendants point out in their reply brief, while Parling may have verified on March 24, 2005 that Plaintiff would have employment in Illinois following his transfer there, this did not serve to verify employment in Michigan while Plaintiff was still awaiting transfer to Illinois and was still under the jurisdiction of the MDOC. (Defs.'s Reply 6.) The Court concludes that, based on her review of the case notes, Parling had probable cause to include this violation in her Affidavit.

Even were the Court to conclude that one of the violations cited in the Affidavit was not

supported by probable cause, such a lack of probable cause would not be material to the ultimate finding of probable cause. Defendant Nelson testified unequivocally that, pursuant to policy, the two failures to report on June 30, 2005 and July 7, 2005, which are uncontested violations, standing alone would have supported the decision to issue the bench warrant. (Defs.'s Mot. Ex. 7, Nelson Dep. 133.) Plaintiff has presented no evidence to suggest that this was not the policy of the Michigan Department of Corrections. Thus, even though the Court concludes that there is a genuine issue of material fact as to Parling's probable cause to believe that Plaintiff had violated Condition #9 of his probation by failing to make restitution payments, this fact is not material to the Court's conclusion that the warrant was issued on probable cause.

### 2. Nelson's approval of the warrant.

Plaintiff argues that Nelson also lacked probable cause to approve the warrant which was requested by Parling on July 29, 2005. However, Nelson explained that she reviewed this particular warrant pursuant to standard procedure which included, with an experienced agent like Parling, reviewing it for form, to be sure the charges are properly written and to approve the format. (Defs.'s Mot. Ex. 7, Nelson Dep. 23-24, 100-101; Defs.'s Mot. Ex. 10, Nelson Aff. ¶ 3.) There appears to be no question that at the time she approved the warrant, Nelson had no knowledge that Plaintiff was reporting in Illinois and in fact knew nothing about and had no interest in the case. (*Id*. at 104-105.) Plaintiff does not offer any evidence to create a genuine issue of fact as to Nelson's testimony that prior to Plaintiff's phone call in October, 2005, she had no knowledge that Plaintiff was reporting in Illinois. Nor does Plaintiff provide any evidence that Nelson failed to follow procedure in relying on the information provided by Parling and approving the warrant for format, not content. The Court concludes that Nelson, like Parling, had probable cause to approve the warrant on July 29,

2005.

### 3. Plaintiff's return to Michigan in October, 2005 to clear up the warrant

Plaintiff claims that when he was arrested in Illinois on September 30, 2005 and called Michigan probation to see why there was a warrant out for his arrest, he spoke with Nelson (who took the call for Parling who was on an extended leave) and that Nelson told him to "get his butt back to Michigan." Plaintiff states that he did so, and consequently lost his job. Nelson testified that when she received Plaintiff's call, she told Plaintiff to stay in Illinois and not to jeopardize his job by coming back to Michigan to straighten out the warrant, which Nelson told Plaintiff she thought she could straighten out administratively. (Defs.'s Mot. Ex. 7, Nelson Dep. 124-125.)

This contradiction in testimony creates a genuine issue of material fact and the Court resolves this issue in Plaintiff's favor for purposes of this motion and assumes that Nelson told Plaintiff to return to Michigan to clear up the warrant. There is no evidence of any subsequent arrest on any Michigan warrant after Plaintiff's release in Cook County. Plaintiff did, however, return to Michigan, turn himself in at the Washtenaw County Jail shortly before 9:00 a.m. on October 31, 2005, and was released following a hearing, with the charges dismissed, approximately 4 hours later, around 1:00 p.m. (Pl.'s Resp. Ex. 2, Fleming Dep. 49-50.)

Plaintiff avers in his Complaint that "Defendants Nelson and Parling unreasonably refused to investigate Plaintiff's claims of being in full compliance or consider his evidence or contact the Cook County Probation Department and unreasonably continued the warrant and charges." (Compl. ¶ 43.) Plaintiff argues that Nelson should have "take[n] the warrant out of the lien, withdraw[n] the warrant request or otherwise eliminate[d] the situation" following Plaintiff's phone call after his Illinois arrest. (Pl.'s Resp. 26.) When asked in her deposition whether she had the authority to have

the warrant dismissed, Nelson testified as follows:

> Q: With all of the information that you know, would you have been able to dismiss this bench warrant prior to Mr. Fleming coming to court?
>
> A: I always can dismiss a warrant. Would I have dismissed this warrant? Absolutely not, because there are valid charges that have nothing to do with the transfer to Illinois. These have nothing to do with that.
>
> Q: Would the information you had when you was [sic] investigating this bench warrant and the reasons why he was reporting in another state, none of that would have called you to dismiss this warrant?
>
> A: Probably not. If anything, now seeing everything that I didn't have back then, I'm more convinced than ever that this was a very valid warrant and should have been processed.

(Defs.'s Mot. Ex. 7, Nelson Dep. 136.)

Nelson testified that, although it was against procedure, she did place a call to Cook County probation and verified that Plaintiff had been reporting there. (Pl.'s Resp. Ex. 10, Nelson Dep. 35.) Plaintiff also indicated his understanding that Illinois and Michigan probation employees were not supposed to communicate directly about a probationer. (Pl.'s Resp. Ex. 1, Fleming Dep. 46.) Nelson stated, however, that even having verified that Plaintiff was reporting in Illinois, she still could not discharge the warrant because there was no documentation in the file that she reviewed that indicated that Plaintiff's transfer had been accepted in Illinois and that the other violations listed on the warrant were no longer valid. The case file, as Nelson reviewed it at the time, indicated that Plaintiff was still under the authority of the MDOC probation department and reporting in Michigan. Nelson explained her decision as follows:

> There was – he was supposedly living in Wayne County for a period of time. And then he supposedly was living back in Washtenaw and they were consistently trying to verify the address, the agent and the field service assistant at that time and couldn't get the address verified. So, it appeared that we didn't know where he was. The file did not have the interstate contact paperwork in it except for one piece of

> paper that didn't make sense, because it was a case closure saying that a warrant had been issued. And I didn't understand that. That was part of the reason why I had to look into it more to find out what was going on.

(Pl.'s Resp. Ex. 10, Nelson Dep. 33.) Plaintiff does not contest the fact that the file was confusingly incomplete, as Nelson testified. Plaintiff has produced no evidence that would demonstrate that Nelson actually possessed knowledge that would have unequivocally rendered the warrant invalid. For example, there is no evidence that in fact the file that Nelson reviewed contained the interstate transfer paperwork and that Nelson was lying or that Nelson had other information, apart from what she saw in the file, which informed her that the charges contained in the warrant were no longer valid. Absent such evidence, Nelson was entitled to continue to rely on the facially valid warrant when Plaintiff called from Illinois to report that he had been arrested. *See Masters v. Crouch*, 872 F.2d 1248, 1253 (6th Cir. 1989).

In *Ahlers, supra* the court discussed the obligation of an officer faced with the type of situation confronting Nelson when Plaintiff called from Illinois protesting his innocence. Discussing its earlier unpublished decision in *Crisp v. City of Kenton*, No. 97-3192, 1998 WL 180561 (6th Cir. 1998), the court in *Ahlers* declined to impose an investigative obligation on the officer:

> [O]n the basis of the information the officers actually had, as opposed to information they could have had if they had looked at Crisp's identification and believed his story, the officers certainly had sufficient information with which to establish probable cause. Likewise, this panel concludes that on the basis of the information known to them, i.e., Stiltner's statement and the window of opportunity, these Defendants established sufficient probable cause to sustain Ahlers's arrest. Although Parsons's investigation certainly was no model of thoroughness and left many reasonable sources of evidence unexplored, on the basis of the facts before us, we find that the district court properly concluded that there were no genuine issues of material fact as to whether Defendants had sufficient probable cause to sustain Ahlers's arrest.

188 F.3d at 372.

The evidence indicates that Nelson actually took affirmative steps, even against department policy, to try resolve the inconsistencies between Plaintiff's apparent reporting in Illinois and the case file she had before her. (Defs.'s Mot. Ex. 7, Nelson Dep. 35, 118-120.) There is no genuine issue of material fact as to Nelson's claim that she never saw the Reply to Transfer Request – the critical document that would have clarified Plaintiff's reporting status – at any time before Plaintiff came to Illinois and turned himself in to the Washtenaw County Court. (Defs.'s Mot. Ex. 10, Nelson Aff. ¶ 5.) Plaintiff's unsupported allegation that Nelson "must have known" that Plaintiff had been accepted and was reporting in Illinois is not sufficient to create a genuine issue of material fact. Moreover, Plaintiff has presented no evidence that Nelson had any knowledge which would have caused her to doubt the validity of the other violations contained in the warrant, which Nelson testified appeared valid and unrelated to Plaintiff's reporting in Illinois. On October 12, 2005, less than two weeks after first contacting Nelson, and before Nelson completed her investigation, Plaintiff left his job and on October 31, 2005, returned to Michigan and turned himself in to clear up the warrant. (Pl.'s Resp. Ex. 29 ).

"Probable cause determinations involve an examination of all facts and circumstances within an officer's knowledge at the time of an arrest." *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000) (citing *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999)). No reasonable jury could conclude, even resolving all factual disputes in favor of Plaintiff, that Nelson should have dismissed this facially valid warrant, without further investigation, even though she confirmed that Plaintiff was reporting in Illinois, given the fact that the probation file lacked any indication that Plaintiff's transfer had been accepted and the warrant contained other seemingly valid violations unrelated to

Plaintiff's reporting conduct. Viewing the evidence in the light most favorable to the Plaintiff, i.e. that Nelson did instruct Plaintiff to return to Michigan to answer on the warrant, the Court concludes that on the basis of the facts before her, Nelson had probable cause to continue the warrant (or not to dismiss it) while she investigated the inconsistencies between the file and Plaintiff's apparent reporting in Illinois.[4]

## B. Malicious Prosecution

Plaintiff claims that the facts surrounding the request and approval of the July 29, 2005 Affidavit, as well as the facts surrounding his return to Michigan in October, 2005, also support a claim for malicious prosecution under federal law. Although the Sixth Circuit has recognized a § 1983 claim for malicious prosecution, "the contours of such a claim remain uncertain." *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007). The court in *Fox* stated that certainly: "[S]uch a claim fails when there [is] probable cause to prosecute, or when the defendant did not make, influence, or participate in the decision to prosecute." While the court in *Fox* inferred that such a claim could lie against an officer who was personally involved in the determination that there was probable cause to arrest Fox, and therefore "made, influenced or participated in the decision" to prosecute Fox, the court concluded the absence of probable cause defeated such a claim. The parties did not brief this issue but the Court's conclusion that there was probable cause to issue and approve the affidavit, and the Court's further conclusion that there was probable cause to continue the warrant while

---

[4] Plaintiff includes reference to Parling in her allegations regarding Defendants' conduct after Plaintiff's arrest in Illinois on September 30, 2005 and before his appearance in Michigan on October 31, 2005, but it is clear that Parling was on an extended leave of absence at the time and Nelson was handling the matter in Parling's absence. (Defs.'s Mot. Ex. 5, Parling Dep. 141.) None of the evidence which Plaintiff points to in support of his allegations surrounding this time frame relate in any way to Parling.

investigating matters subsequent to Plaintiff's arrest in Illinois on September 30, 2005, defeats Plaintiff's wholly derivative malicious prosecution claim. *Fox* clearly instructs that no claim for malicious prosecution will lie where, as here, probable cause is determined to exist.[5]

## C.    Supervisory Liability

"At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). In view of the Court's conclusion that Parling did not violate Plaintiff's constitutional rights, Nelson, as Plaintiff's supervisor, cannot have knowingly acquiesced in any unconstitutional conduct. Moreover, the Court concludes that Nelson cannot be held liable in a supervisory capacity for her role in approving the warrant for format pursuant to established department policy. Nelson did not in any way contribute to the content of the Affidavit or its drafting. *See Hays v. Jefferson County*, 668 F.2d 869 (6th Cir. 1982), *cert denied*, 459 U.S. 833 (1982) (holding that a supervisor's failure to supervise or control is not actionable unless the supervisor "either encouraged the specific incident of misconduct or in

---

[5] Plaintiff argues in his brief, although not alleged in his Complaint, that Parling further violated Plaintiff's constitutional rights when she prepared the November 3, 2005 Petition and Order for Amendment of Order of Probation, in which she falsely stated that Plaintiff's probation was continued with all original terms and conditions at the October 31, 2005 arraignment (Pl.'s Resp. Ex. 22). Plaintiff claims that, as a result of this Petition, he was required to, and did, continue to report in Illinois throughout the months of November, December and January, even though his probation had been fully discharged at his arraignment in Michigan on October 31, 2005. (Defs.'s Mot. Ex. 12, Cook County Probation Notes finally closing Plaintiff's case on 2/07/06). However, Plaintiff's Complaint does not in any way refer to this conduct and the Complaint does not state a claim based on these facts. Plaintiff has not moved to amend his Complaint to add such a claim and the Court, therefore, does not address this theory of liability.

[6] Nelson's liability with respect to the events that occurred after Plaintiff's arrest in Illinois on September 30, 2005 and before Plaintiff appeared in court in Michigan on October 31, 2005, is discussed above in Section A3.

some other way directly participated in it.")[6]

**D.    Qualified Immunity**

If Plaintiff was not deprived of a constitutional right, as the Court concludes Plaintiff was not, "there is no claim under section 1983, and defendants have no need for a qualified immunity defense." *Ahlers, supra* at 374. Even if the Court were to conclude, however, that Defendants lacked probable cause in requesting and approving the warrant or in failing to formally dismiss the warrant following Plaintiff's arrest in Illinois on September 30, 2005, the Court concludes that the Defendants would be entitled to qualified immunity for these violations. "Section 1983 claims are limited by the qualified immunity exception, such that a government employee will be shielded from liability so long as the employee acted under the objectively reasonable belief that his or her actions were lawful. A successful § 1983 claimant must establish that the defendant acted knowingly or intentionally to violate his or her constitutional rights such that mere negligence or recklessness is insufficient." *Ahlers , supra* at 372-373 (internal citations and quotation marks omitted). "Existing case law establishes that a [government official] can only be held liable for requesting a warrant which allegedly led to a false arrest if he 'stated a deliberate falsehood or acted with a reckless disregard for the truth. Proof of negligence or innocent mistake is insufficient.'" *Id*. at 374 (quoting *Lippay v. Christos*, 996 F.2d 1490, 1501 (3d Cir.1993) and *Malley v. Briggs*, 475 U.S. 335, 344-45, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986) ("Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost.") (internal citation omitted)). Thus, in order to deprive Defendants of the cloak of qualified immunity, Plaintiff must make a substantial showing that the Defendants stated a

deliberate falsehood or showed reckless disregard for the truth and that the allegedly false or omitted information was material to a finding of probable cause.  *Hill, supra.*

    **1.**    **Qualified Immunity with respect to requesting and approving the Warrant on July 29, 2005**

Plaintiff argues that while the Affidavit may be truthful on its face, or "within its four corners" as Plaintiff's counsel conceded at oral argument, it is rendered lacking in probable cause by what was known by Parling and not disclosed in her request for approval of the warrant.  Plaintiff suggests that Parling "must have known" on July 25, 2005, when she requested the warrant for Plaintiff's arrest, that Plaintiff's transfer had been accepted in Illinois and that Plaintiff was actually reporting in Illinois.  While there is no evidence to support an assertion that Parling actually possessed this knowledge, Plaintiff urges the Court to conclude that Parling's failure to discover this information was deliberate or at least in reckless disregard for the truth.

There is no question that on July 14, 2005, Washtenaw County received the Reply to Transfer Request, indicating Plaintiff's June 18, 2005 Illinois reporting date.  But there is also no question that this document never made it into Plaintiff's file. Nelson testified that this document should have been placed in Plaintiff's file and that it was not there when she reviewed the file in October, 2005.  Parling testified that she never saw the validated transfer request and never learned that Plaintiff's transfer request had been accepted and that he had received a reporting instructions in Illinois.  (Defs. Mot. Ex. 5, Parling Dep. 175; Defs.'s Mot. Ex. 11, Parling Aff. ¶¶ 4-5; Defs.'s Mot. Ex. 11. Parling Aff. ¶¶ 4,5.)  She testified that when she reviewed the case notes in preparing the warrant on July 29, 2005, the case notes indicated that Plaintiff had reported in Michigan on June 10, 2005 and had failed to report since that date.  Parling testified that she never had knowledge that

he was reporting in Illinois.  (*Id*.)  She was never contacted by Plaintiff or anyone in Cook County informing her that he was reporting there.  (*Id*. 177-178.)  Significantly, it is also undisputed that Parling was out on an extended leave for part of this time and that it was not unusual for papers such as Plaintiff's transfer request to go unnoticed or not be properly filed for a significant period of time. (Defs.'s Mot. Ex. 7, Nelson Dep. 133-134.)  Thus, while it may have been negligent or sloppy for Parling to have failed to discover that Plaintiff was reporting pursuant to a valid transfer and employed in Illinois, there is no evidence that it was deliberate or knowing.  Other than the Reply to Transfer Request (Pl.'s Resp. Ex. 23) which was time stamped received by Washtenaw County on July 14, 2005, just two weeks before Parling requested the warrant, there is no evidence to suggest that Parling knew, or should have discovered,  that in fact Plaintiff's transfer had been approved at the time she requested the warrant.  Nor is there any evidence that Parling learned this information at anytime after she requested the warrant, but before Plaintiff's arrest.  Reviewing Plaintiff's case notes as they appeared when Parling executed the Affidavit in support of the warrant, one gets the firm impression of a probationer who, on multiple occasions, gave probation officers a significant a run around.  While Plaintiff maintains that Parling "must have known," despite these case notes, that Plaintiff was validly reporting in Illinois, this unsupported assertion does not suffice to create a genuine issue of fact. The Court concludes that Parling would, in any event, be entitled to qualified immunity for her actions in requesting and issuing the July 29, 2005 warrant for Plaintiff's arrest.  Similarly Nelson, who undeniably knew nothing about Plaintiff's case at the time she approved the warrant for format pursuant to department policy, would be entitled to qualified immunity.

With respect to paragraph 3 of the Affidavit, which states that Plaintiff had missed payments

and was in violation of condition 9 of his probation that he pay $26,000 in restitution to his ex-wife, the Court concludes that Parling would be entitled to qualified immunity for including this violation in the Affidavit. Parling had a good faith belief that Plaintiff still owed money to the State of Michigan and although she may have been wrong in this belief, there is no evidence that her statement that Plaintiff had violated this condition of his parole was made in reckless disregard for the truth. Additionally, Nelson testified that the two last failures to report, in and of themselves, would have been sufficient to sustain the Affidavit and therefore the failure of paragraph 3 would not be material to the finding of probable cause.

> 2. **Qualified Immunity with respect to events surrounding Plaintiff's return to Michigan to clear up the warrant.**

There is no suggestion that Parling, who was on an extended leave of absence, was involved in the events surrounding Plaintiff's return to Michigan following his arrest in Illinois on September 30, 2005. Plaintiff claims that Defendant Nelson, however, acting in Parling's absence, told him to "get his back to Michigan." However, as discussed above, Plaintiff was arrested in Illinois pursuant to a valid warrant and there is no suggestion that Plaintiff was arrested again after his release from jail in Cook County. Moreover, the evidence supports Nelson's decision not to immediately dismiss the warrant, which appeared valid and enforceable based on her review of Plaintiff's file when he called her from Illinois following his arrest. While the Court may speculate about what internal departmental inefficiencies may have resulted in the Reply to Transfer Request never making it into Plaintiff's file, there is no evidence that this was done intentionally or even with reckless disregard for the truth.

The evidence also supports the conclusion that Nelson actually made an effort to verify Plaintiff's claim that he was reporting in Illinois by calling the Cook County probation department.

But, as Nelson testified, even knowing that Plaintiff had been reporting in Illinois, she could not make a determination that the warrant was no longer valid because the file, as she reviewed it, did not indicate that Plaintiff had been accepted in Illinois or that the other violations listed in the Affidavit were no longer valid. Even assuming, therefore, that Nelson somehow influenced Plaintiff's decision to return to Michigan, it is clearly established that an officer is entitled to continue to rely on a facially valid warrant absent actual knowledge that the information contained in the warrant is false: "[P]olice and correction employees may rely on facially valid arrest warrants even in the face of vehement claims of innocence by reason of mistake or otherwise." *Masters, supra* at 1253. "Only where the warrant [ ] is so lacking in probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost." *Malley, supra* at 344-345. While Nelson may have been able to do more, or act more quickly, to resolve the true facts surrounding Plaintiff's acceptance of transfer in Illinois and to determine the continued validity of the warrant, there is no indication that her failure to do so was intentional or in reckless disregard for the truth. "Of course, a more sensitive group of public employees might have made the additional investigation, but the Constitution did not require it." *Id*. at 1252. The Court concludes that Nelson's conduct is protected by the shield of qualified immunity.

IV.     **CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' Motion for Summary Judgment (Dkt. No. 29.)

IT IS SO ORDERED.

                                        s/Paul D. Borman
                                        PAUL D. BORMAN
                                        UNITED STATES DISTRICT JUDGE

Dated:  April 16, 2010

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on April 16, 2010.


s/Denise Goodine_____
Case Manager